Dekbigny, J.
delivered the opinion of thp court. Abel Terril and John T. Marsh, for. merly trading under the firm of Terril Sc Marsh, owned a brig narped the Hero, which while here was consigned to the house of Flower and Fin-lay, the defendants, in February J817. Sometime before the departure of the brig from thjs port, John T. Marsh one of the plaintiffs applied to them to cause the vessel to be insured. It js al. ledged that he gave positive orders for that purpose, requesting the insurance to be made both for the outward and the return voyage. The im *637 surance, however was not effected; and the brig having been struck by lightning and considerably shattered on her return here, the plaintiffs pray that their agents may be decreed to pay them damages to the amount of their Ioss.tt-Fromthe verdict and judgment which the plaintiffs obtained in the court of the first district, the defendants have appealed,
The defence, which they set up, is
I. That Abel Terrill and JohnT. Marsh, being no longer in partnership at the time this suit was instituted, could not sue in the name of the firm.
2 That the instructions,, given by the appel-lees to effect insurance, were not positive but discretionary, and they did not extend to the return voyage.
3. That supposing the instructions to have been positive, the appellees have failed in taking the legal steps necessary to make the appellants liable.
I. The first ground we consider as untenable' in a case where all the parties interested in the late firm have united as plaintiffs in the suit. It would at best make it questionable whether they can recover jointly or must have judgment each for his share ; but it cannot defeat their rights to join in the same suit for claiming property which is so common between them.
*638 n. The next plea of the appellants rests prin-1 11 1 cipally on matter of fact. And here, although it it is evident that the jury cannot have found for the plaintiffs, without being satisfied that the instructions for insuring were positive, and that they did extend to the return voyage, yet as the verdict is a general one, and the whole of the evidence is spread before us, such as it was produced below, the law makes it our duty to en-quire into that evidence, and to decide whether it supports the finding of the jury.
That instructions, were given by one of the plaintiffs, to the appellants to effect insurance on the brig Hero, when*she was about to sail from this port in February, 1817, is a fact satisfactorily established. Whether these instructions extended to the return voyage of the brig is the question which requires investigation.—To this point one single witness has deposed. This deposition, if rational in itself and not inconsistent with the circumstances of the case, must prevail. Let us examine it attentively. An evening in February, 1817, the witness went into the store of the defendants with John T. Marsh, one of the plaintiffs, and then and there heard a conversation which took place between Marsh and the late Michael Finlay, one of the partners of the house, relative to the insurance of the brig Hero, on a voyage then in contemplation to be *639 performed.—Here is from the beginning a ■ c ■ , r great want or c<ytainty, as to the voyage for which this is insurance is to be made. This only witness, on whose only deposition the defendants are to be charged, does not know what was the voyage, about which this conversation took place. The brig was dispatched sometime after to Norfolk or Richmond : but surely we are not to conclude from thence that the voyage, in contemplation at the time of the conversation alluded to, was indubitably the voyage which was afterwards performed. Yet unless the identity of the voyage be proved beyond a doubt, the plaintiffs’ case has no basis to rest Upon. But to proceed: Marsh, who had not made up his mind about insuring the brig, asked Finlay, “ whether it would be best to insure her Finlay after some hesitation, said : “ yes ; the brig should be insured, as she will be on her return voyage about the equinoctial gales."1 Here the witness gives the reason for which the brig was to be insured ; that reason must be consistent; for if the motive, said to have been assigned for an action, is incompatible with it, the person who relates what he has heard, will be supposed to have misunderstood the conversation. If a witness would say that a vessel was ordered to be dispatched in December to Greenland, to avail herself of the long days and mild season, there would be no *640 of such witness having mistaken oné country for another, and no hesitation in believing that the vessel was sent to-the south, con* ° . 1 trary to the positive declaration of the witness. The mistake here is not quite so striking , but the act and the reason assigned for it are equally incompatible.—The owner of the vessel, hesitating whether he will or not have her insured, is advised to have an insurance effected, because of the danger of the equinoctial gales. The vessel is likely to sail, and did astually sail, at the latter end of February : immediate danger awaits her the moment she leaves this port. Yet, what is the reason assigned for the insurance ? That she will be exposed to the equinoctial gales on her return. What ! And not on the outward voyage ? If she was to be insured on account of the equinoctial gales, was Hot the outward infinitely more dangerous than the return voyage ? During the first, she was certainly to be exposed í during the second, it was doubtful. If she was detained until the middle of April (and the evidence is that she did not sail before the 22d. though she met with no delay) the dangerous season was over. Yet not a word is said of the insurance on the voyage &ut, and without any recommendation to that effect, Finlay takes a memorandum in writing of the insurance to be made on both. Is this credible ? And must we *641 hot conclude, on the contrary, that the reason assigned for insuring this vessel applied to the immediate voyage, not to the other, and that the witness misunderstood the remark made by Fin-lay—An additional reason to be convinced, that such was the understanding of the parties, is that the per centage spoken of is applicable only to one voyage. For if the insurance was to be effected on both, five per cent, not two and a half, Would have been mentioned as the probable amount of premium. The conduct of the appellants too, after they had given this advice, agrees perfectly with the motive which they had assigned. They go to the insurance office, and propose to have the brig insured for the immediate voyage, that during which the vessel was likely to encounter the equinoctial gales : no mention is made of the other. And here, let us understand the nature of the instructions given by Marsh to Finlay, the better to test the extent of responsibility to which the appellants may be subject. Marsh did not come to Finlay with a determined intention to have his brig insured at all events : he did not order him at once to cause the insurance to be made. He consulted him upon the subject; and had Finlay told him, that the insurance was unnecessary, it is more than probable that he would have thought no more of it. Fin-lay. however, considering that the vessel was *642 a^oui to ’oe exposed to the equinoctial gales, recommended him to have her insured on that account. It is very clear, that in giving that advice, he must have had in view the outward voyage ; and, that he so understood it is evident from the application at the insurance office. Notv, although error will not discharge an agent, to whom positive orders are given, in terms that cannot be mistaken, because there the mistake must be owing to carelessness or neglect, the case is certainly different, when it is the principal, who has misunderstood the advice given him by his agent. If the agent evidently meant one voyage, and the principal understood another, no contract of mandate, can be said to have taken place between them ; for in that, as in all other covenants, consent is the principal ingredient, obligatio mandati consensu contrahentium consis tit; {ff. mand.) and there can be no consent where the object of the contract is mistaken : si de alia re stipulator, de alia promissor senserit, nulla contrahitur obligatio.
But, supposing that Marsh had given to Fin lay clear and explicit orders to insure the vessel, both for the outward and return voyage, yet, from a view of the other facts in the case, we do not deem this sufficient to entitle the plaintiffs to recover.
What an agent fails to do according to his in» *643 structions, or what he undertakes to do bevond those instructions, will not always make him answerable for the consequences. If the constituent chooses to ratify what he has done, or to assent to what he has omitted to do, he is, of course, discharged from any responsibility. We find in this case, that before the return of the brig to this port, a particular account of the expenses of the vessel, together with a general account current between the parties, is handed to one of the plaintiffs. The account consists of a few items, and amounts only to the sum of S327. The article of the premium of insurance would have nearly doubled it. The account, howevfer, is received, and not one word is said about the omission of the premium ; and that, while it was yet time to insure, while the plaintiffs, if they really had ordered the insurance to be made on the return voyage, could yet have the omission supplied, or supply it themselves. Was not that silence an acquiescence in the omission ? Most undoubtedly, and why that acquiescence ? For this very simple reason : the time of the equinoctial gales was over, and the object of the insurance no longer existed. ' It is objected that Terril, who received the account, had probably no knowledge of the orders given by Marsh. ' We must suppose the reverse, and believe that two partners, .who reside in the. same parish, perhaps in *644 the same house, did not fail to communicate to each other any thing material to their common interest ; and that during nearly three months, which elapsed between the order for insuring and the rendering of the account to Terril, Marsh djd not leave his partner uninformed of what he had done with respect to the vessel, which constituted, it appears, no inconsiderable portion of their partnership stock, and in relation to which, it is admitted, “ he was always unwilling.to give any instructions without the concurrence of Ter-ril.”—It may be further observed, that Marsh himself settled an account with the defendants in July following, and gave them a receipt “ for balance as for statement rendered,” that in August of the saipe year, Terril sent them some money to be credited on his account, and that as late as November, he requested them to forward him some articles, for which he says “he shall not be in funds to pay before March.” If the whole of this conduct, and particularly the receiptiof the account in May, be not an acquiescence in the omission of the insurance, nothing short of an express declaration to that effect could be deemed sufficient. Yet, it is a principle generally acknowledged that the acts of the constituent, from which an adoption of those of his agent may be implied, ought to be construed liberally. In case of an act done beyond or without the au • *645 tborisation of the principal, there is no doubt that . r . . . . his knowing and seeing it, and remaining silent amounts to an approbation. Pothier, contract de mandat, no, 99. Why his silence at the omission of an act by him ordered to be done, should not also amount to an acquiescence, principally while it is yet time to supply the omission, we should be at a loss to conceive.
We are, upon the whole, satisfied that the verdict and judgment from which this appeal is claimed, are predicated upon mistaken evidence, and contrary to the rules of law, which govern the contract of mandate.
It is, therefore ordered, adjudged and decreed, that the judgment of the district court be annulled, avoided and reversed ; and that judgment be entered for the appellants with costs.